UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

KALA WHITE,

                Plaintiff,                Case No. 2:09-cv-134

v.                                          Honorable R. Allan Edgar

AMY HATHAWAY et al.,

                Defendants.
_____/

**OPINION**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Discussion**

I.   Factual allegations

Plaintiff currently is incarcerated at Baraga Maximum Correctional Facility (AMF). In his *pro se* complaint, he sues the Honorable Judge Amy Hathaway, Wayne County Clerk Cathy Garrett, Attorney General Michael Cox, RUM unknown Delene, United States Post Office (USPO), Michigan Department of Corrections (MDOC), and Michigan Department of Treasury (Michigan Treasury).

Plaintiff's claims stem from a action brought against him by Defendant Cox, on behalf of the Michigan Treasury, under the State Correctional Facility Reimbursement Act (SCFRA). (Am. Compl. at 7-8, docket #4.) Plaintiff received an Order to Show Cause as to why his assets should not be applied to reimburse the State of Michigan for the cost of his confinement. (Ex. B, docket #4-2.) After receiving that order, he requested the Michigan Bar Journal and a copy of the SCFRA from the law library to verify the court's address and prepare his response. (*Id.* at 8.) Plaintiff did not receive the requested materials, but still prepared his "Answer and Counterclaim" and mailed it to the address for the court listed on the summons. (*Id.* at 10; *see also* Ex. C, docket #4-2.) Plaintiff also moved the court for a writ to allow him to appear at the show cause hearing. (Am. Compl. at 10.)

Plaintiff also claims that Defendant Judge Hathaway entered an order in the SCFRA case freezing his account and permitting him to spend only $25.00 a month on personal items. (*Id.*) Plaintiff alleges that the MDOC improperly enforced this order by deducting the cost of legal mail. (*Id.* at 11.) Plaintiff states that he brought the alleged incorrect enforcement to Defendant Delene's attention to no avail. (*Id.*) He alleges that he was deprived of toothpaste from April 26 to May 8,

2009 and from May 24 to June 5, 2009 for a total of 24 days. (*Id.* at 13.) Plaintiff claims that this caused him to experience excruciating toothaches and headaches during both those periods of time and was unable to "properly brush his teeth." (*Id.*) Plaintiff also alleges that Defendant Delene refused Plaintiff permission to call Defendant Judge Hathaway's chambers regarding the order, the documents Plaintiff filed and the hearing. (*Id.* at 14-15.)

Plaintiff claims that the date of the hearing passed and he was not called or taken to court. He then received an order allowing the State of Michigan to use Plaintiff's assets for partial reimbursement of the actual costs of incarceration. (*Id.* at 15-16; Ex. A, docket #4-2.)

Plaintiff requests monetary and injunctive relief. (Am. Compl. at 18-37.)

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S. Ct.

at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Judge Hathaway

Plaintiff states that he moved for the execution of a writ to be present at the order to show cause hearing. (Compl. at 10.) He also states that Defendant Hathaway issued an order permitting Plaintiff to spend only $25.00 a month on personal items, which was improperly executed by Defendant Delene. (*Id.* at 10-11.) Plaintiff alleges that he was not called to the hearing and that there was no mention of whether the court has received his filings in the order disposing of his case issued after the hearing. (*Id*. at 15-16.) Plaintiff alleges that Defendant Hathaway's actions deprived him of his constitutional right to access the courts. (*Id.* at 19-22.)

Generally, a judge is absolutely immune from a suit for monetary damages. *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991) ("it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of person consequences to himself"); *Barrett*

*v. Harrington*, 130 F.3d 246, 254 (6th Cir. 1997); *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997). Absolute judicial immunity may be overcome in only two instances. First, a judge is not immune from liability for non-judicial actions, i.e., actions not taken in the judge's judicial capacity. *Mireles*, 502 U.S. at 11. Second, a judge is not immune for actions, though judicial in nature, taken in complete absence of all jurisdiction. *Id.* at 12.

Plaintiff's allegations clearly fail to implicate either of the exceptions to judicial immunity. There is no doubt that the hearing held and orders executed were judicial acts and that Judge Hathaway was acting within her jurisdiction in doing so. Accordingly, Judge Hathaway is absolutely immune from liability. Because Judge Hathaway is clearly immune from liability in this case, Plaintiff may not maintain an action for monetary damages against her. 28 U.S.C. § 1915(e)(2)(B)(iii). Therefore, Plaintiff fails to state a claim against Defendant Hathaway.

### B. Michigan Department of Corrections

Plaintiff alleges that he submitted three requests for the Michigan Bar Journal's address book and the State Correctional Facility Reimbursement Act, the basis of suit that was brought against Plaintiff, to the library and received no response. (Am. Compl. at 8, 9.) Plaintiff further alleges that the (MDOC) improperly executed Judge Hathaway's order regarding the $25 month limitation on spending on his account (*Id.* at 11.)

Plaintiff may not maintain a § 1983 action against the Michigan Department of Corrections. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782

(1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See*, *e.g.*, *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000); *Erdman v. Mich. Dep't of Corr.*, No. 94-2109, 1995 WL 150341, at *1 (6th Cir. Apr. 5, 1995); *Cullens v. Bemis*, No. 92-1582, 1992 WL 337688, at *1 (6th Cir. Nov. 18, 1992); *Adams v. Mich. Dep't of Corr.*, No. 86-1803, 1987 WL 36006, at *1 (6th Cir. May 7, 1987). In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). Therefore, the Court will dismiss the Michigan Department of Corrections.

### C. Defendants Cox and Michigan Treasury

Plaintiff appears to allege that Defendant Cox and the Michigan Treasury violated his rights under the Equal Protection Clause. Plaintiff alleges that Defendant Cox violated his rights because there is no indication that he has or will be suing any other prisoner under SCFRA. (Am. Compl. at 17.) Plaintiff alleges that Defendant Cox brought the lawsuit against him on behalf of the Michigan Treasury. (*Id.* at 6-7.) Plaintiff also requests monetary damages because Defendants Cox and Michigan Treasury filed a discriminatory lawsuit against him. (*Id.* at 35-36.)

The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. A state practice

generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Petitioner does not suggest that he is a member of a suspect class, and "prisoners are not considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog,* 411 F.3d 615, 619 (6th Cir. 2005); *see also Wilson v. Yaklich,* 148 F.3d 596, 604 (6th Cir.1998). In addition, prisoners do not have a fundamental right to not be prosecuted under state law under the Constitution.

Because neither a fundamental right nor a suspect class is at issue, the rational basis review standard applies. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)). To prove his equal protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). It appears likely that the reason a lawsuit under the SCFRA was brought against Plaintiff is because he has some recoverable assets. Other inmates may not have any recoverable assets and, therefore, it is a rational decision of Defendants Cox and the Michigan Treasury to not expend resources to obtain judgments against those inmates. Plaintiff has failed to demonstrate that he was intentionally treated differently from similarly situated individuals and fails to state a claim against Defendant Cox or the Michigan Treasury[1].

---

[1] The Michigan Treasury is also immune for the reasons discussed in the previous section regarding the MDOC.

### D. Defendant Delene

Plaintiff makes three claims against Defendant Delene. First, Plaintiff alleges that Defendant Delene violated his rights under the Due Process Clause by improperly executing Hathaway's order by removing money from Plaintiff's prisoner account for Plaintiff's legal mailings. (Am. Compl. at 11.) Second, Plaintiff alleges that this removal resulted in him not having enough money to buy toothpaste for two twelve-day periods during April, May and June 2009. According to Plaintiff, not having toothpaste caused him to have "excruciating toothaches and headaches" in violation of the Eighth Amendment. (*Id*. at 13.) Third, Plaintiff asserts that Defendant Delene barred his access to the Court by denying Plaintiff's request to place a phone call to Judge Hathaway's chambers for clarification of the order limiting the spending from his prisoner account and to verify the court's address. (*Id.* at 13-15.)

#### i. *Due Process*

Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized negligent acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v.*

*Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not and cannot do so. Plaintiff has not alleged that state post-deprivation remedies are inadequate. The Sixth Circuit has found that Michigan law provides "several adequate post-deprivation remedies" to a prisoner asserting improper removal of money from his prison account. *Copeland*, 57 F.3d at 480. In a number of cases similar to this one, the Sixth Circuit has affirmed dismissal where the inmate failed to allege and show that state law post-deprivation remedies were inadequate. *Id.* at 479-80 (money wrongly removed from prison account); *Lillie v. McGraw*, No. 97-3359, 1997 WL 778050, at *1 (6th Cir. Dec. 12, 1997) (officials allegedly broke television); *Mowatt v. Miller*, No. 92-1204, 1993 WL 27460, at *1 (6th Cir. Feb. 5, 1993) (misapplication of money to a deficit in prison account); *Shabazz v. Lecureux*, No. 85-2014, 1986 WL 16140, at *1 (6th Cir. Dec. 5, 1986) (illegal appropriation of money from prisoner account). Accordingly, Plaintiff fails to state a claim for violation of his due process rights by Defendant Delene.

    ii. <u>Eighth Amendment</u>

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized

measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

Plaintiff's allegations are clearly not in violation of the Eighth Amendment. He states that he was deprived of toothpaste for two twelve-day periods within three months. He does not claim that he did not have access to a toothbrush. Additionally, allegations about temporary inconveniences, e.g., being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001). Plaintiff was deprived only of toothpaste for two brief periods of time. Therefore, Plaintiff fails to state a claim for violation of his Eighth Amendment rights.

iii. Access to the Court

Plaintiff asserts that Defendant Delene barred his access to the court by denying Plaintiff's request to place a phone call to Judge Hathaway's chambers for clarification of the order limiting spending from his prisoner account and obtaining the court's address. (Am. Compl. at 13-15.) It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or

alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop v. Johnson*, 977 F.2d 996, 1000 (6th Cir. 1992); *Ryder v. Ochten*, No. 96-2043, 1997 WL 720482, *1-2 (6th Cir. Nov. 12, 1997). In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-353; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

Plaintiff has failed to plead or show that the alleged deprivation of legal material caused an actual injury to his efforts to defend against the SCFRA action. Although Plaintiff did not receive the requested library material, he did have the court's address from the summons and was able to mail a response and his counter-claim to the court. Therefore, Plaintiff fails to state a claim for denial of access to the courts.

### E.    Defendants Garrett and United States Post Office

Plaintiff state that "if" Defendants Garrett and the USPO are responsible for his answer, counterclaim and motion for writ not reaching Judge Hathaway, then he requests monetary damages. (Am. Compl. at 29-30.) While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The court must determine whether the complaint contains

"enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The court need not accept "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)). Plaintiff's allegations against Defendants Garret and USPO are simply insufficient to state a claim.

## Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: 10/1/09          */s/ R. Allan Edgar*
                        R. Allan Edgar
                        United States District Judge